**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff LUIS LICEA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUIS LICEA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PLANET FITNESS FRANCHISING, LLC, a Delaware limited liability company; PLA-FIT FRANCHISE, LLC, a New Hampshire limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | **Case No.: 5:26-cv-5167**<br><br>**COMPLAINT FOR:**<br><br>**1. Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189;**<br><br>**2. Violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52;**<br><br>**3. Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a).** |

Plaintiff Luis Licea ("Plaintiff") alleges as follows:

## I. NATURE OF THE ACTION

1. This is an individual civil-rights and privacy action concerning two distinct failures in the design and operation of PLANETFITNESS.COM (the "Website"). First, Planet Fitness uses the Website as the digital front door to its physical health clubs: visitors locate clubs, review location-specific amenities and pricing, select membership plans, choose a home club, and begin or complete the enrollment process for services that are delivered at brick-and-mortar Planet Fitness gyms. Yet the Website is coded in a manner that prevented Plaintiff, a legally blind consumer using the JAWS 26 screen reader, from independently understanding core Website content, operating navigation menus, and completing a gym-membership enrollment. Second, even after a visitor affirmatively rejects non-essential tracking, the Website deploys Pinterest Conversion Tracking code that acquires page-level communications, including user-entered search data, and associates those communications with a persistent user identifier.

2. Plaintiff is legally blind. He uses a Dell laptop running Windows 11 and relies on JAWS 26, a screen-reader program that vocalizes computer content and enables blind users to navigate applications and websites through keyboard commands. JAWS does not perceive a page visually. It obtains information from the browser accessibility tree, which is derived from the Document Object Model (DOM), native HTML semantics, accessible names, roles, states, values, headings, landmarks, list structures, form labels, focus order, and properly implemented ARIA attributes. When developers expose only a visual relationship, omit a programmatic name or state, implement a custom widget without keyboard behavior, or move focus into an inaccessible component, the screen reader cannot provide a blind user the information and control available to a sighted visitor.

3. Within the last month, Plaintiff visited the Website using Google Chrome to locate a nearby Planet Fitness club and purchase a gym membership. He did not browse for abstract information or to manufacture standing. He attempted the same commercial sequence Planet Fitness invites consumers to use: explore the home page, use the site

navigation, select "Memberships" and "Join Now," choose the Planet Fitness location at 18683 Bear Valley Road, Hesperia, California 92395, review that club, select a PF BLACK CARD® membership, and enter the information required to enroll.

4. Plaintiff encountered barriers at multiple stages of that transaction. On the homepage, slide controls were exposed to JAWS only as positional announcements such as "1/3, 2/3, 3/3" and, on another carousel, "1/4, 2/4, 3/4, 4/4." The accessible interface did not convey to Plaintiff what information the corresponding visual slides communicated. Plaintiff therefore could not determine whether promotional, membership, location, or other material information shown visually in the carousel applied to him or his intended purchase.

5. The navigation menus were also unusable. Plaintiff activated a control announced as "why PF button collapsed" and attempted to open the "Why Planet Fitness" menu. Instead of exposing an operable set of menu choices, the component trapped or displaced the JAWS cursor and silenced screen-reader output beneath the menu. The "About Planet Fitness" menu produced the same result. A sighted user could visually perceive and choose the menu options; Plaintiff could not independently reach or understand them through his assistive technology.

6. Plaintiff nevertheless persisted. He reached the Memberships page, selected "Join Now," chose the 18683 Bear Valley Road Hesperia club, selected "Club Details," chose the PF BLACK CARD® plan, and proceeded into the enrollment workflow. The form then exposed edit fields in a confusing manner that did not reliably identify the information each field required. After Plaintiff pressed "Continue," focus and cursor behavior again became unusable: pressing the down arrow caused the JAWS cursor to become stuck rather than moving through the next portion of the transaction. The cumulative barriers frustrated Plaintiff, deprived him of independent access, and deterred him from completing the Planet Fitness membership.

7. The barriers implicate well-established accessibility requirements reflected in the Web Content Accessibility Guidelines (WCAG). WCAG is not pleaded as an

independent source of ADA liability; it is a widely accepted technical benchmark that explains how web content can be made perceivable, operable, understandable, and robust for assistive technologies. The defects encountered by Plaintiff implicate, among other criteria, WCAG 2.2 Success Criteria 1.1.1 (Non-text Content), 1.3.1 (Info and Relationships), 2.1.1 (Keyboard), 2.1.2 (No Keyboard Trap), 2.4.3 (Focus Order), 2.4.6 (Headings and Labels), 3.3.2 (Labels or Instructions), 4.1.2 (Name, Role, Value), and, to the extent dynamically changed content is not announced, 4.1.3 (Status Messages).

8. Plaintiff also reviewed the automated WAVE accessibility evaluation identified at https://wave.webaim.org/report#/planetfitness.com. WAVE is an automated and semi-automated testing aid developed by WebAIM. Automated testing cannot determine every accessibility defect and does not replace manual screen-reader testing. Plaintiff therefore relies principally on the barriers he personally encountered with JAWS, while using WAVE and WCAG as technical corroboration and diagnostic frameworks for the same Website architecture.

9. The privacy violation is equally concrete. A separate technical inspection of the Website tested the consent-management banner by rejecting all non-essential cookies. Notwithstanding that rejection, Pinterest Conversion Tracking remained operative. The Website transmitted to Pinterest a page-view URL that included user-entered search data after the opt-out, and Pinterest assigned the otherwise anonymous visitor a user ID used for cross-session identification and stored that identifier as a first-party cookie on the planetfitness.com domain.

10. That post-rejection acquisition is especially significant because a user-entered search term communicates the substance of what the visitor is asking the Website to do. It is content, not merely an IP address or generic routing field. By embedding Pinterest conversion code in the Website, Defendants cause the visitor's browser to generate a separate HTTPS communication to Pinterest contemporaneously with the visitor's Planet Fitness browsing event. HTTPS does not prevent the interception alleged here: the

browser itself addresses the separate request to Pinterest, and Pinterest decrypts and reads the request at its own endpoint.

11. Pinterest is not alleged to be a passive wire or electronic tape recorder that merely stores data for Planet Fitness. Conversion tracking exists to attribute user behavior to advertising, measure and optimize campaigns, recognize browsers across sessions, create advertising audiences, and support targeted marketing. Planet Fitness itself publicly discloses that it collects URL-string information such as search keywords, cookie or tracking-pixel information, browsing and search history, device and advertising identifiers, and that it sells or shares categories of Internet or electronic-network activity with third-party marketing partners. The challenged interception thus serves an independent advertising purpose.

12. Plaintiff seeks injunctive relief under the ADA requiring remediation and maintenance of the Website so that blind users can independently use the same services offered to sighted consumers; statutory and other relief under the Unruh Act; and statutory relief under CIPA for the post-rejection interception of Website communications.

## II. <u>JURISDICTION AND VENUE</u>

13. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts a claim under Title III of the ADA, 42 U.S.C. §§ 12181-12189. The Court has supplemental jurisdiction over Plaintiff's related California-law claims under 28 U.S.C. § 1367 because they arise from the same Website, the same visit, and a common nucleus of operative facts concerning Defendants' design and operation of the Website.

14. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and because the Website transaction Plaintiff attempted was directed to the Planet Fitness club at 18683 Bear Valley Road, Hesperia, California 92395, in San Bernardino County, within this District.

15. Planet Fitness Franchising, LLC purposefully directs the Website and its membership-enrollment services to California consumers and identifies numerous

California Planet Fitness clubs through the Website. Planet MV, LLC operates the Hesperia Bear Valley Road club selected by Plaintiff and is the franchisee/lessee associated with that physical location. Defendants therefore transact business in this District and are subject to personal jurisdiction here.

## III. THE PARTIES

16. Plaintiff Luis Licea is an individual who is legally blind and substantially limited in the major life activity of seeing. He is a person with a disability within the meaning of the ADA. Plaintiff uses JAWS 26 and keyboard navigation to access websites and intends to return to PLANETFITNESS.COM and obtain a Planet Fitness membership when the barriers are removed.

17. Defendant Planet Fitness Franchising, LLC ("PFF") is a Delaware limited liability company headquartered in Hampton, New Hampshire. PFF operates PLANETFITNESS.COM and presents the Website as the national Planet Fitness platform through which consumers can locate clubs, review plans, select physical locations, and begin or complete membership enrollment. The Website identifies PFF in its copyright and privacy materials and sends communications on behalf of PFF, its affiliates, and local franchisees.

18. Defendant Planet MV, LLC ("Planet MV") is, on information and belief, a California limited liability company and Planet Fitness franchisee that operates the physical Planet Fitness club at 18683 Bear Valley Road, Hesperia, California 92395. That is the specific club Plaintiff selected through the Website before the inaccessible enrollment sequence prevented him from completing his membership.

19. Plaintiff is ignorant of the true names and capacities of DOES 1 through 10 and therefore sues them by fictitious names. Plaintiff will amend this Complaint when their identities and roles are discovered.

## IV. THE WEBSITE HAS A DIRECT NEXUS TO PHYSICAL PLANET FITNESS CLUBS

20. Title III applies to the goods, services, privileges, and advantages of places of public accommodation. A website that facilitates access to the goods and services of physical public accommodations is covered where there is a nexus between the website and the physical places.

21. The required nexus is unusually direct here. PLANETFITNESS.COM is designed around physical club locations. Its public navigation invites users to "Find a Club Near You," review a club's location-specific details, compare membership plans, choose a home club, and enroll for access to the selected physical gym. Planet Fitness publicly lists California clubs by city and provides a dedicated page for the Hesperia Bear Valley Road location.

22. The goods and services at issue cannot be separated from the physical club. A Classic membership provides access to a home club; a PF BLACK CARD® membership provides access to physical clubs and location-based amenities. The Website identifies the particular physical club to which the membership applies and presents club-specific pricing, hours, equipment, amenities, and enrollment options.

23. Plaintiff's own attempted transaction proves the nexus. He selected the physical Planet Fitness facility at 18683 Bear Valley Road, Hesperia, clicked that club's details, chose the PF BLACK CARD® plan, and entered the enrollment process so that he could become a member and physically use Planet Fitness gym services. The inaccessible Website was not an unrelated online publication; it was the mechanism Planet Fitness provided for Plaintiff to obtain access to a brick-and-mortar gym.

24. Because Defendants integrate the Website into the sale, administration, and delivery of services at physical Planet Fitness clubs, denying blind users effective access to the Website denies them full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of those clubs.

## V. HOW SCREEN-READER ACCESSIBILITY WORKS

25. A modern browser parses HTML into a DOM and constructs an accessibility tree that exposes interface objects to assistive technologies. JAWS queries that accessibility tree through platform accessibility APIs. For each control or content structure, JAWS depends on programmatically determinable information such as role, accessible name, state, value, position, relationships, heading level, landmark, list membership, and form-label association.

26. Native HTML controls generally expose these semantics automatically when used correctly. Custom widgets can also be accessible, but developers must reproduce keyboard interaction and programmatic semantics through valid markup and ARIA. Merely drawing a visible arrow, menu, slide, label, or focus state on screen does not provide equivalent information to JAWS.

27. Carousels illustrate the problem encountered by Plaintiff. A sighted user can see the image, headline, promotional text, and the relationship between a slide and its navigation control. If the accessibility tree exposes only a numeric position such as "1/3" without the slide's meaningful text or accessible name, a blind user learns that some item exists but not what information the item conveys. If slide changes are visual only, the user may also receive no programmatic announcement that content changed.

28. Disclosure and navigation menus likewise require a programmatically determinable expanded/collapsed state, predictable focus movement, keyboard operability, and an accessible path into and out of the revealed content. A menu that captures focus, silences the screen reader, or prevents the virtual cursor from continuing can function as a keyboard or focus trap even if a mouse user can visually click elsewhere.

29. Forms require persistent and programmatically associated labels or instructions. Placeholder text, visual proximity, or styling alone may be insufficient because JAWS announces the accessible name and role of the current form control. When multiple edit fields are exposed without descriptive names or when focus advances

unpredictably after submission, a blind user cannot independently determine what information belongs in which field or correct errors.

30. These defects are readily remediable through ordinary web-development practices: semantic headings; text alternatives for meaningful graphics; accessible carousel names and status announcements; correctly implemented disclosure/menu patterns; keyboard-operable controls; visible and programmatic focus management; explicit labels and instructions; accurate ARIA name/role/state/value information; and regression testing with JAWS, NVDA, VoiceOver, and keyboard-only navigation.

## VI. PLAINTIFF PERSONALLY ENCOUNTERED ACCESSIBILITY BARRIERS

31. Plaintiff actually encountered the barriers alleged in this Complaint during his September 3, 2026 attempt to purchase a Planet Fitness membership. These are not barriers identified only by a litigation consultant or automated scanner.

32. The homepage carousels failed to communicate their substantive content through JAWS. Activating the slide control resulted in bare positional announcements, leaving Plaintiff unable to determine the information visually conveyed in the slides. This interfered with his ability to evaluate the Website and implicated WCAG criteria requiring text alternatives, preserved information and relationships, meaningful labels, and robust programmatic name/role/value information.

33. The "Why Planet Fitness" and "About Planet Fitness" disclosure/menu components interfered with keyboard and screen-reader focus. After Plaintiff activated the collapsed controls, JAWS became silent and the cursor became stuck instead of exposing the submenu choices in a predictable navigable order. This is the type of failure addressed by WCAG 2.1.1, 2.1.2, 2.4.3, and 4.1.2.

34. The membership enrollment workflow contained confusing edit fields and unusable cursor behavior. Plaintiff was unable to identify and move through the requested fields with the same certainty available from the visual presentation, and after continuing

to the next stage his down-arrow navigation became stuck. Those barriers implicate WCAG 1.3.1, 2.4.3, 2.4.6, 3.3.2, and 4.1.2.

35. The barriers were material to the transaction. Plaintiff reached the specific Hesperia club and selected the PF BLACK CARD® membership before the inaccessible form sequence stopped him. He experienced frustration and loss of independence and abandoned the transaction without obtaining the membership he sought.

36. Plaintiff wants to return to the Website and complete a Planet Fitness membership transaction once he can do so independently with JAWS. He is presently deterred by the barriers he actually encountered and faces a real and immediate threat of encountering them again so long as Defendants maintain the same inaccessible code and interaction patterns.

## VII. DEFENDANTS' POST-REJECTION TRACKING INTERCEPTS WEBSITE COMMUNICATIONS

37. The Website presents a consent-management interface that purports to permit visitors to reject non-essential tracking. A technical test of the live Website selected that rejection option and then inspected network traffic and browser storage.

38. After the visitor rejected all non-essential cookies, Pinterest Conversion Tracking continued to receive Website communications. The Pinterest conversion request included the page-view URL and user-entered search data. The request was transmitted after the opt-out, not merely before the visitor had an opportunity to interact with the consent banner.

39. The same testing showed that Pinterest assigns an otherwise anonymous visitor a user identifier for cross-session recognition and stores the identifier as first-party cookie data on the planetfitness.com domain. The identifier permits the advertising system to associate activity across separate visits rather than treating each page view as an isolated event.

40. At the network level, the interception occurs through client-side code embedded in the Website. When Plaintiff's browser loads or interacts with a Planet

Fitness page, Defendant-selected JavaScript constructs or triggers a separate outbound request to a Pinterest endpoint. That request is created contemporaneously with the Website event and carries the URL/search information and identifying parameters. Pinterest receives and reads that request at its own server endpoint.

41. The use of HTTPS does not make the transmission inaccessible to Pinterest. TLS encrypts traffic between endpoints in transit over the network. It does not hide a request from the endpoint to which the browser intentionally sends it. The Website code causes the browser itself to address a separate encrypted communication to Pinterest; Pinterest terminates TLS and receives the plaintext request parameters at its endpoint by design.

42. The user-entered search term is communication content. It reveals what location or information the visitor asked Planet Fitness to find and therefore conveys the substance and meaning of the user's interaction. It is categorically different from an IP address or generic routing information that merely identifies a network endpoint.

43. Planet Fitness's own privacy disclosures corroborate the commercial tracking architecture. Its California privacy notice states that it collects URL-string information such as search keywords, cookie or tracking-pixel information, interaction with its website, browsing and search history, device identifiers and advertising identifiers, and discloses or shares categories of Internet/electronic-network activity with third-party marketing partners.

44. The continued Pinterest transmission after rejection defeats any contention that the communication was acquired with prior consent. A visitor who has expressly rejected non-essential cookies has communicated the opposite. Consent obtained after interception cannot retroactively authorize the acquisition. See Javier v. Assurance IQ, LLC, 56 F.4th 1195, 1201-03 (9th Cir. 2022).

45. The consent banner is therefore materially misleading as implemented. It represents that a visitor can reject non-essential tracking while the Website continues to

disclose page-level content and search information to an advertising platform whose conversion-tracking function is not necessary to deliver the requested Planet Fitness page.

## VIII. CAUSES OF ACTION

## FIRST CAUSE OF ACTION - TITLE III OF THE ADA

46. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

47. Plaintiff is disabled within the meaning of 42 U.S.C. § 12102 because he is legally blind and substantially limited in seeing. Planet Fitness gyms are places of public accommodation, including places of exercise or recreation and service establishments, within 42 U.S.C. § 12181(7).

48. Defendants own, lease, operate, franchise, control, and/or provide the Website services that are integrated with Planet Fitness physical clubs. The Website has a direct nexus to those clubs because it locates facilities, presents club-specific membership plans and amenities, allows selection of a physical home club, and provides the enrollment mechanism for obtaining in-club fitness services.

49. By failing to provide an accessible Website, Defendants denied Plaintiff full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered through and at Planet Fitness clubs, in violation of 42 U.S.C. § 12182(a).

50. Defendants failed to furnish appropriate auxiliary aids and services and failed to take reasonable steps necessary to ensure effective communication with Plaintiff. The barriers were caused by digital design choices that can be corrected without fundamentally altering the nature of Planet Fitness's services.

51. Remediation is readily achievable and technically routine. Defendants can provide meaningful text alternatives and carousel announcements, keyboard-operable menus, non-trapping focus behavior, meaningful accessible names and states, descriptive form labels and instructions, logical focus movement, and ongoing accessibility testing.

52. Plaintiff remains deterred from returning because of the known barriers but intends to return and complete a membership transaction when the Website is accessible. The barriers remain subject to Defendants' control and can recur unless Defendants remediate and maintain the Website.

53. Plaintiff is entitled to injunctive relief under 42 U.S.C. § 12188 and reasonable attorneys' fees, litigation expenses, and costs under 42 U.S.C. § 12205.

## SECOND CAUSE OF ACTION - UNRUH CIVIL RIGHTS ACT

54. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

55. Defendants are business establishments within the meaning of California Civil Code § 51. The Unruh Act guarantees persons with disabilities full and equal accommodations, advantages, facilities, privileges, and services in business establishments of every kind.

56. California Civil Code § 51(f) provides that a violation of the ADA also constitutes a violation of the Unruh Act. Because Defendants violated Title III as alleged above, they violated the Unruh Act. See Munson v. Del Taco, Inc., 46 Cal. 4th 661, 664-70 (2009).

57. Plaintiff personally encountered the Website barriers while attempting an actual membership transaction directed to the Hesperia Bear Valley Road club. The barriers deprived him of independent access and caused him to abandon the transaction.

58. Plaintiff is entitled to statutory damages under Civil Code § 52(a) for each actionable denial of full and equal access proven, together with injunctive relief, reasonable attorneys' fees, and costs as permitted by law.

## THIRD CAUSE OF ACTION - CIPA, CAL. PENAL CODE § 631(a)

59. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

60. California Penal Code § 631(a) prohibits, among other things, willfully and without the consent of all parties reading, attempting to read, or learning the contents or meaning of a communication while it is in transit or passing over a wire, line, cable, or instrument, and imposes liability on a person who aids, agrees with, employs, or conspires with another to do so. Section 631 applies to Internet communications. Javier, 56 F.4th at 1200-03.

61. Defendants selected, embedded, enabled, and maintained Pinterest Conversion Tracking on the Website. That browser-side code causes Website events to generate contemporaneous third-party requests to Pinterest and thereby acquires or facilitates acquisition of Website communications while they are in transit.

62. The tested request included contents within the meaning of CIPA: the page-view URL including user-entered search data. A search term reveals the substance and meaning of the visitor's communication and is not merely addressing or routing metadata.

63. Pinterest is a third party to the communication Plaintiff intended to have with Planet Fitness and has independent commercial purposes for conversion tracking, campaign attribution, cross-session recognition, audience creation, and targeted advertising. It is not alleged to function only as a passive extension of Planet Fitness that merely stores information without independent use.

64. Consent was absent. The test affirmatively rejected all non-essential cookies before the challenged Pinterest acquisition. A rejection is an express denial of permission, and a later disclosure or privacy policy cannot retroactively authorize an interception that has already occurred.

65. Defendants intentionally aided, permitted, agreed with, and employed Pinterest to receive those communications by deploying the pixel and related code on the Website. The third-party request would not occur in the challenged form but for Defendants' Website configuration.

66. Defendants acted willfully and knowingly because Pinterest Conversion Tracking is not an accidental network intermediary. It is an intentionally deployed

advertising technology, and the existence of a consent-management interface demonstrates awareness that advertising tracking is a distinct category for which the visitor is offered a choice.

67. Plaintiff is entitled to the statutory remedy provided by California Penal Code § 637.2, including $5,000 per violation or three times actual damages where applicable, and all other relief permitted by law.

## PRAYER FOR RELIEF

a. For an order declaring that Defendants' conduct violates Title III of the ADA, the Unruh Civil Rights Act, and CIPA as alleged;
b. For a permanent injunction requiring Defendants to provide Plaintiff full and equal access to PLANETFITNESS.COM and the goods, services, facilities, privileges, and advantages of the physical Planet Fitness clubs to which the Website connects, including remediation of the barriers alleged and an effective program for maintaining accessibility;
c. For statutory damages under California Civil Code § 52 and California Penal Code § 637.2 in amounts proven and permitted by law;
d. For actual damages according to proof to the extent recoverable;
e. For reasonable attorneys' fees, litigation expenses, and costs under 42 U.S.C. § 12205, California Civil Code § 52, and other applicable law;
f. For pre- and post-judgment interest as permitted by law; and
g. For such other and further relief as the Court deems just and proper.

Dated: September 7, 2026

PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorney for Plaintiff